**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

HOPE MACFARLAN,

           Plaintiff,

                                                  Case No. 3:15-cv-605-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Hope Macfarlan ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of "IBS with [d]iaherra (sic), cramps, pain everyday," and "[a]nxiety disorder due to medical condition." See Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed July 20, 2015, at 207. (emphasis omitted). On June 20, 2011, Plaintiff filed an application for DIB, alleging an onset of disability of January 1, 2009. Tr. at 173-74. Plaintiff's filing date is listed elsewhere in the administrative transcript as June 17, 2011. Tr. at 85, 98, 99, 114, 115. Plaintiff's application was denied initially, Tr. at 85-97, 98, 116-20, and on reconsideration, Tr. at 99-113, 114, 115, 126-30.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed July 20, 2015; Reference Order (Doc. No. 12), entered July 21, 2015.

On April 10, 2013, an Administrative Law Judge ("ALJ") held a hearing at which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 42-84. On May 21, 2013, the ALJ issued a Decision finding Plaintiff not disabled from January 1, 2009 through the date of the Decision. Tr. at 26-36. Plaintiff then requested review by the Appeals Council, Tr. at 11-12, and submitted evidence to the Council in the form of a brief authored by her representative, see Tr. at 14-16. On January 30, 2015, the Appeals Council granted Plaintiff's request for review and advised Plaintiff that it planned to issue a decision finding Plaintiff not disabled. Tr. at 168-72. Additionally, the Appeals Council advised Plaintiff that it would consider any comments or new and material evidence she submitted within thirty days. Tr. at 170. Plaintiff submitted additional medical evidence to the Appeals Council. Tr. at 9, 662-75 (St. Vincent's medical records), 679-92 (Dr. Peter Kuhlman medical records), 694-724 (Crucial Care Emergency Medicine Doctors medical records), 727-98 (St. Vincent's medical records). On March 17, 2015, the Appeals Council affirmed the finding that the Plaintiff was not disabled and issued a Decision of the Appeals Council that became the final decision of the Commissioner. Tr. at 1-3, 4-8. On May 14, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes two arguments on appeal: (1) "The ALJ erred by inaccurately assessing the evidence in the record" in making his credibility finding; and (2) "[t]he ALJ erred by not placing appropriate weight on the opinions of the treating physicians."[2] Plaintiff's

---

[2] Although Plaintiff makes reference to treating physicians, her only challenge is with regard to the opinions of her treating rheumatologist, Dr. Benjamin Wang. See Pl.'s Mem. at 12-14.

-2-

Memorandum in Support of Complaint (Doc. No. 15; "Pl.'s Mem."), filed July 29, 2015, at 7-14 (some capitalization and emphasis omitted). Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 16; "Def.'s Mem.") on November 12, 2015. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons stated herein.

## II.  The ALJ's Decision/Appeals Council's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry in the Decision. See Tr. at 28-35. Thereafter, the Appeals Council "adopt[ed] the [ALJ's] statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

evidentiary facts, as applicable,. . . . the [ALJ's] findings or conclusions regarding whether [Plaintiff] is disabled, [and] the [ALJ's] findings under steps 1, 2, 3, and 4 of the sequential evaluation process." Tr. at 4 (citations omitted).

At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date."[4] Tr. at 28 (emphasis and citation omitted); see also Tr. at 4, 6. At step two, the ALJ found that Plaintiff "has the following severe impairments: lumbar degenerative disc disease, endocrine disorder not otherwise specified (NOS), chronic fatigue syndrome, irritable bowel syndrome (IBS), specific phobia, somatization disorder, and major depressive disorder." Tr. at 28 (emphasis and citation omitted); see also Tr. at 4-5, 6-7. At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 29 (emphasis and citation omitted); see also Tr. at 5, 7.

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work . . . with limitations. Specifically, [Plaintiff] is limited to occasional climbing of ladders, ropes, scaffolds, ramps, or stairs. In addition, she can engage in no more than occasional balancing, stooping, kneeling, crouching, and crawling. She must avoid concentrated exposure to vibration, poorly ventilated areas and environmental irritants such as fumes, odors, dusts, gases. [Plaintiff] must also avoid concentrated use of moving machinery, concentrated exposure to unprotected heights. She is limited to occupations that do not require more than occasional travel in unfamiliar places, or occasional use of public transportation. Furthermore, her work is limited to simple, routine, and repetitive tasks performed in a work

---

[4] The ALJ found that Plaintiff received unemployment benefits in 2010, but noted that such benefits do not constitute substantial gainful activity under the Regulations. Tr. at 28.

-4-

> environment free of fast-paced production requirements involving only simple work related decisions and routine workplace changes. Finally, she is limited to occasional interaction with the public and occasional supervision.

Tr. at 30 (emphasis and citations omitted); see also Tr. at 5, 7. At step four, the ALJ found, with the assistance of testimony from the VE, that Plaintiff is "unable to perform any past relevant work" as "Production, Superintendent," "Consultant, Education," or "Manager, Advertising." Tr. at 34 (emphasis omitted); see also Tr. at 7.

The Appeals Council noted that the "[D]ecision's finding at step 5 is inconsistent with [Plaintiff's RFC] for sedentary work" because the "[D]ecision used the medical-vocational rules for light work." Tr. at 5.[5] The Appeals Council further noted, "[a]t the hearing, the [ALJ] posed numerous hypothetical questions to the [VE]. Hypothetical number two . . . matches the [D]ecision's [RFC] for a reduced range of sedentary work." Tr. at 6 (citations omitted). Based on the second hypothetical, the VE testified that an "individual with the same age, education, work experience, and [RFC] would be capable of performing the following [sedentary] jobs: Addresser, . . . Surveillance System Operator, . . . and Table Worker." Tr. at 6 (citations omitted). The Appeals Council found at step 5 that the medical-vocational rules "provide[] a framework for a finding of 'not disabled', which . . . is supported by the [VE] testimony obtained at the hearing." Accordingly, "the Appeals Council [found] that [Plaintiff] was not disabled at any time from January 1, 2009, through May 21, 2013, the date of the [ALJ's] [D]ecision. " Tr. at 6.

---

[5] At step five, the ALJ considered Plaintiff's age ("35 years old . . .on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, and determined, with the assistance of the VE, that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 23 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified representative light exertional jobs such as a "Ticket Taker" and a "Marker." Tr. at 50. The Appeals Council found this finding was not supported by substantial evidence. Tr. at 5.

### **III.  Standard of Review**

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'"  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### **IV.  Discussion**

As indicated above, Plaintiff raises two issues before this Court.  The first concerns the ALJ's basis for the credibility finding, and the second concerns the ALJ's consideration

of the opinions of Dr. Benjamin Wang, Plaintiff's treating rheumatologist. Pl.'s Mem. at 7-14. These issues are addressed in turn below.

**A. Credibility Finding**

Plaintiff submits that the ALJ erroneously discredited Plaintiff "due to her statements that she traveled for the Wounded Warrior organization at least twice a month, cared for her son and engaged in an exercise regimen." Pl.'s Mem. at 8 (citing Tr. at 33-34). She argues that these facts are wrong, and the ALJ's reliance on these errors undermines the ALJ's credibility finding in the Decision necessitating reversal. Id. Defendant responds that there is substantial evidence supporting the ALJ's credibility finding. Def.'s Mem. at 4-10. As for the claimed factual errors, Defendant admits there was one error in that it was Plaintiff's husband, and not Plaintiff, who worked for the Wounded Warrior Project. Id. at 11. Defendant argues, however, that the factual error is harmless in light of the "wealth of medical evidence" supporting the ALJ's credibility determination. Id. Based upon a review of the Decision and the administrative record, the undersigned finds that the ALJ stated adequate reasons for finding Plaintiff's statements less than credible and that the ALJ's credibility finding is supported by substantial evidence.

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.

1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

In discussing the credibility of Plaintiff's complaints, the ALJ stated as follows:

[Plaintiff] alleges disability due to irritable bowel syndrome (IBS), chronic fatigue syndrome (CFS), and anxiety disorder. In addition, she reported that her symptoms include recurrent diarrhea, abdominal cramps, fatigue, dizziness, weakness, and sleep disturbance that allegedly make[] it difficult to complete daily tasks such as grocery shopping, running errands, household chores, and independently caring for her son when her IBS flares. Nevertheless, [Plaintiff] admitted she can generally complete such tasks by taking breaks, intermittently laying down, or having occasional assistance from her husband or nanny. Likewise, she can independently address her personal needs, manage her

>personal finances without assistance, and drive short distances despite the alleged severity of her symptoms.

Tr. at 31 (citations omitted).  The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." Tr. at 31.[6]

The ALJ then proceeded to discuss the medical evidence.  Tr. at 31-33.  As noted by Defendant, the ALJ discussed the MRIs of the lumbar spine that show mild degenerative changes and minimal disc protrusions; recent nerve studies that show no radiculopathy; and numerous physical examinations that show generally normal findings.  Def.'s Mem. at 6. Defendant argues that these findings of minimal physical impairments support the ALJ's discrediting of Plaintiff's claims of disabling back pain.  Id. at 7.  As for Plaintiff's IBS, the ALJ referenced that Plaintiff's "gastrointestinal symptoms improved with medication." Tr. at 31. And the ALJ noted that "[Plaintiff's] doctors successfully treated her symptoms with medication and conservative treatment." Tr. at 32.

As for the claimed factual errors, Plaintiff argues, without any citation to legal authority, that "[e]ven if a single error is made, if that error is relied upon, it may be enough to justify a remand." Pl.'s Mem. at 8.  Relevant to Plaintiff's arguments, the ALJ stated, "despite [Plaintiff's] fatigue and syncope complaints with possible fibromyalgia manifestations, her ability to care for her now five-year-old son, her reported bimonthly travel with the Wounded Warriors Project organization, and the above noted recommendation by her doctor that she

---

[6] The Appeals Council adopted the ALJ's credibility finding. Tr. at 7.

engage in a regular, low intensity exercise habit to address her impairments, suggests an ability to perform at least sedentary work on a sustained basis." Tr. at 33 (citations omitted).

Plaintiff argues that she was the primary caretaker for her son prior to her health problems but that a sitter now assists her with driving her son and household chores. Pl.'s Mem. at 9. As noted by Defendant, the ALJ acknowledged the assistance of the nanny, but rejected the nanny's description of Plaintiff's symptoms. Def.'s Mem. at 11 (referring to Tr. at 29, 31, 33). The record includes evidence that Plaintiff is able to drive short distances and can pick up her son from school. Tr. 71, 511. Additionally, she testified that when the sitter is not helping her, she is the primary caretaker for her son. Tr. at 68. Thus, the undersigned finds no error in the ALJ's reference to Plaintiff's ability to care for her son as a factor to support the credibility finding.

Regarding the issue of exercise, Plaintiff claims there is no evidence that she engages in a formal exercise regimen. Pl.'s Mem. at 10. The gravamen of her complaint on this argument appears to be the ALJ's reference to doctors recommending she start yoga. Id. Upon review of the medical records, there is a note in the February 21, 2013 records of Dr. Rebecca Farinas in which more exercise and "try yoga" are recommended. Tr. at 626. Additionally, the ALJ did not state that Plaintiff is engaged in a regular exercise routine, but rather that her doctors have recommended a "regular, low intensity exercise habit," Tr. at 33, suggesting Plaintiff is physically able to exercise regularly. This statement is supported by the record. Tr. at 395, 569, 626.

The ALJ cited numerous objective medical findings that supported that Plaintiff's impairments were not as limiting as alleged. Tr. at 31-33. Additionally, the ALJ noted that

-10-

Plaintiff can independently address personal needs, tend to finances, and drive short distances. Tr. at 31. These factors, along with the notation that "doctors successfully treated her symptoms with medication and conservative treatment," see Tr. at 32, demonstrate that the ALJ's credibility determination is supported by substantial evidence. The error regarding travel with the Wounded Warrior Project is harmless.[7] Accordingly, the Decision is due to be affirmed on this issue.

## B. Medical Opinions

In her second argument, Plaintiff contends that the ALJ did not afford appropriate weight to the opinion of her treating rheumatologist, Dr. Wang. Pl.'s Mem. at 12-13. In response, Defendant submits that the ALJ stated reasons for giving little weight to Dr. Wang's opinions and that substantial evidence supports the stated reasons. Def.'s Mem. at 12.

### 1. Applicable Law

The Regulations establish a "hierarchy" among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating

---

[7] If an ALJ's error does not affect the ultimate findings and the decision is supported by substantial evidence, a reviewing court may find the error to be harmless, and that the decision should be affirmed. See Tillman v. Comm'r, Soc. Sec. Admin., 559 F. App'x 975, (11th Cir. 2014) (citing Diorio v. Heckler, 721 F.2d 726 (11th Cir. 1983)); see also Ostborg v. Comm'r of Soc. Sec., 610 F. App'x 907, 917-18 (11th Cir. 2015) (finding that "ALJ's discussion of other inconsistent statements, such as those concerning [claimant's] alcohol consumption, even if erroneous, was harmless, since substantial evidence support[ed] the ALJ's credibility finding").

[8] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

-11-

physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[9] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the

---

[9] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore, 405 F.3d 1212; Lewis, 125 F.3d at 1440. "In the absence

of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

### 2. Dr. Wang's Opinion

Plaintiff was first seen by Dr. Wang at the Mayo Clinic on November 8, 2011, "for evaluation of a syndrome characterized by chronic fatigue [and] gastrointestinal complaints." (Tr. at 396-99). Dr. Wang noted the possibility of "systemic autoimmune disorder" and "[p]ossible antiphospholipid antibody syndrome." Tr. at 398. He recommended a multidirectional work-up, thyroid studies and radiographs of the pelvis, hips, and sacroiliac joints. Tr. at 398.

Plaintiff was next seen by Dr. Wang on February 2, 2012 for complaints of "fatigue, poor endurance, and some neurologic symptoms." Tr. at 394. His assessment was "chronic fatigue, sleep disturbance, suggestive of central sensitization syndrome[,] [p]erhaps some fibromyalgia manifestations as well[, and] ventricular dilation on CT brain." Tr. at 394-95 (some capitalization omitted).

In a letter dated October 23, 2012, Dr. Wang noted a diagnosis of "chronic fatigue syndrome and irritable bowel syndrome" and opined that Plaintiff "has such a significant level of physical impairment from her conditions that she is unable to maintain gainful employment." Tr. at 551. In April 2013 Dr. Wang completed a questionnaire for Plaintiff's lawyer in which Dr. Wang indicated that Plaintiff's testimony of needing frequent bathroom breaks is consistent with the diagnosis of irritable bowel syndrome and that her testimony of

-14-

fatigue and the need to frequently lie down is consistent with Dr. Wang's treatment of her. Tr. at 657. Dr. Wang further opined that Plaintiff's symptoms are consistent with dysautonomia and that she would miss more than two days of work per month due to this diagnosis. Tr. at 658.

### 3. ALJ Decision/Analysis

In discussing Dr. Wang's opinions, the ALJ stated as follows:

> Turning to the opinion evidence, I give little weight to the opinions from [Plaintiff's] treating physician, Benjamin Wang, M.D. In a letter dated, October 23, 2012, Dr. Wang opined that [Plaintiff's] chronic fatigue syndrome and IBS symptoms preclude her from all gainful employment, and should qualify her for a hardship mortgage. Similarly, on March 15, 2013, Dr. Wang opined that [Plaintiff] would require frequent bathroom breaks, would need to lie down, and would need to miss more than 2 days from work each month due to her IBS and chronic fatigue syndrome symptoms. Dr. Wang further opined that [Plaintiff's] symptoms were consistent with a diagnosis of dysautonomia. Little weight is given to these opinions for several reasons.

Tr. at 32 (citations omitted).

The ALJ then listed four reasons for discrediting the opinions of Dr. Wang:

> First, the opinion regarding dysautonomia appears inconsistent with his own medical records and testing results. Specifically, at a rheumatology subsequent visit in February 2012 treatment notes, it indicates that autonomic screening was negative, and the opinion of a consulting neurologist was that autonomic neuropathy was not present. It was also noted in March 2012 treatment notes that testing had ruled out autoimmune diseases in large part, which included entirely normal autoimmune serologic testing, but identified low salivary cortisol levels. A low-intensity, regular exercise habit was encouraged by Dr. Wang to address a possible central sensitization syndrome related to noted "chronic fatigue, sleep disturbance ... perhaps with fibromyalgia manifestations as well." [Plaintiff] has been limited to sedentary work based upon her fatigue and syncope complaints, with possible fibromyalgia manifestations. However, [Plaintiff's] ability to care for a 3-5 year old, and her doctor's recommendation to engage in a regular, low intensity exercise habit suggests an ability to engage in at least sedentary work on a sustained basis at SGA levels.

> Second, the March 15, 2013 opinion is inconsistent with the October 2012 letter, which only indicates diagnoses of chronic fatigue syndrome and irritable bowel syndrome. There is no mention of [Plaintiff] having a possible diagnosis of dysautonomia despite the testing that had occurred earlier in 2012 discussed above, and lack of any significant testing occurring after October 2012 for dysautonomia.
>
> Third, the opinion does not appear fully consistent with the notes of Dr. Achem[,] who tried to reassure [Plaintiff] regarding her irritable bowel syndrome in August 2011 treatment notes. While Dr. Achem suggested conservative treatment with the medication, Bentyl (which, as noted above, [Plaintiff] has described as a wonderful medication for treating her IBS), he noted that [Plaintiff] insisted on getting further testing including blood work. Dr. Achem also recommended cognitive therapy and continuing care with a local physician.
>
> Fourth, the opinion regarding work limitations appears largely based upon [Plaintiff's] statements and testimony at the hearing that was related by her representative in the medical source form. As such, little weight is given to Dr. Wang's opinions as they are not supported by the overall medical evidence, including his own treatment records and diagnostic test results.

Tr. at 32-33 (citations omitted)..

Plaintiff claims that Dr. Wang's opinions "should have been afforded appropriate weight." Pl.'s Mem. at 14. The undersigned finds that the ALJ articulated good cause reasons supported by the record for discounting the opinions of Dr. Wang. See Lewis, 125 F.3d at 1440. Additionally, to the extent that Dr. Wang was offering an opinion as to the ability of Plaintiff to work, such opinions are reserved for the Commissioner. See Denomme v. Comm'r, Soc. Sec. Admin., 518 F. App'x 875, 878 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)) (holding that decisions such as whether a condition would likely prevent a claimant from maintaining gainful employment was not a medical assessment, but rather an issue reserved to the Commissioner's discretion). Accordingly, the Decision should be affirmed on this issue.

## V. Conclusion

Based on a thorough review of the administrative transcript, and upon consideration of the respective arguments of the parties, the Court finds that the ALJ's Decision is supported by substantial evidence.

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on April 25, 2016.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jde
Copies to:
Counsel of record